BERNHARD GRADLE

*v.*

CHARLES KERN.

*Filed at Ottawa March 26, 1884.*

1. EVIDENCE—*as giving character to an alleged fraudulent transaction.* A, of the firm of A, B & Co., sold a lot of goods, etc., to D, his son-in-law, on the evening of January 11, for which he received a check for the price. B, another partner, not knowing of such sale, afterward sold and delivered

the same goods to E, receiving part cash, and taking a note for the balance. D, the son-in-law, about the same time bought the remaining goods of the firm from A, and brought replevin against E, the other purchaser, which suit was dismissed for want of prosecution, and a return of the goods awarded. The goods not being returned, E brought suit on the replevin bond, the surety alone being found, who pleaded title in his principal by his prior purchase, and that the merits had not been tried in the replevin suit. On the trial the court allowed the other partner, B, and another witness, to testify that B had no knowledge of any sale to D until after the replevin of the goods from E, and to facts tending to show that the remaining part of the stock was taken away in great haste in the afternoon of January 12, after the replevin: *Held*, that this evidence was not irrelevant, but was proper, with other facts shown, to be considered, as tending to prove that the apparent sale to D, the son-in-law, was not real, but a mere device to place the goods and proceeds where A, alone, might avail himself of them, to the exclusion of his partners and the creditors of his firm.

2. SAME—*as against surety in replevin bond.* In an action on a replevin bond, in which the surety alone is served, where he pleads that the merits of the replevin suit were not tried, and sets up title to the property in his principal, whatever evidence would be competent against the principal is competent against the surety, even though it relates to facts occurring after he became surety. The surety in such action has merely the right to assert his principal's title, and deny that of the defendant in replevin, in the same way that the latter might have done in the action of replevin.

3. FRAUDULENT SALE—*passes no title.* A person purchasing a stock of goods from one member of a firm to aid him in defrauding the other partners and the creditors of the firm, will acquire no valid title to the goods, and a subsequent sale made by the other partners in behalf of the firm will pass a good title to the purchaser from them, whether he had notice of the prior sale or not.

4. SALE OF PERSONAL PROPERTY—*possession must accompany the sale.* Where a purchaser, for value, of personal property capable of immediate delivery, suffers the same to remain in the possession of the vendor, and while so in the possession of the vendor a subsequent purchaser of the same property, for value, in good faith and without notice of the former sale, obtains the actual possession of the property, the title of the latter will be upheld, not only as against the vendor, but also as against the first purchaser.

5. LAW AND FACT—*as to diligence in acquiring possession of goods by purchaser.* Whether a purchaser of goods has used due diligence to acquire possession so as to protect his title against a subsequent purchaser, is a question of fact, which the court has no right to take from the jury by an instruction.

APPEAL from the Appellate Court for the First District;— heard in that court on appeal from the Circuit Court of Cook county; the Hon. KIRK HAWES, Judge, presiding.

This was an action of debt, brought by Charles Kern, sheriff, for the use of Emanuel Klein, upon a replevin bond executed by Joseph Metzler, as principal, and Bernhard Gradle, as surety. The replevin suit was dismissed for want of prosecution. By reason of the case not having been disposed of on the merits, the surety, who alone was served, was permitted to plead Metzler's title to the goods replevied, in bar of all except nominal damages.

The record shows that Strausz, Schlesinger and Potowsky were partners, under the name and style of Strausz, Schlesinger & Co., engaged in the manufacture and sale of ear muffs, in the city of Chicago. The manufacturing was done usually in the summer and early fall, and the vending in the . fall and winter. In January, 1877, this firm had on hand in their store a quantity of ear muffs, and a quantity of materials not manufactured, consisting of black plush, black binding and elastic braid, which had cost them about $1000. These last named three articles were not needed for use until the then coming summer. In the early part of January, 1877, the partners agreed that these articles should be sold to raise money to meet their paper about to mature. Not long after, Schlesinger reported to his partners an offer he had received to buy at about $720. On January 11, 1877, Potowsky, having about noon of that day received an offer from Klein to take the lot at $742.88, reported the same to his partners, and advised to accept it. Schlesinger objected, and Strausz was undecided, and hence they came to no conclusion. Afterwards, in the evening of the same day, the approval of Strausz having been given, Potowsky went to Klein's store, and told him they had accepted his offer, and would send the goods over in the morning. In the meantime, Schlesinger met his

own son-in-law, Joseph Metzler, at the store of the latter, and then procured an offer from him to take the goods at $849, which Schlesinger accepted, and Metzler at once gave him a check for that amount, payable to the order of Joseph Metzler, and indorsed by him to Strausz, Schlesinger & Co., and took from Schlesinger a bill of sale of the goods to him, in the name of the firm. This was in the afternoon,—not later than four or five o'clock. On the morning of January 12, 1877, Potowsky put these goods in an express wagon, took them to Klein's store, and delivered them to him about nine or ten o'clock, and received in payment therefor $442 in money, and Klein's due bill to the firm for the balance of the price,—$300. In the course of the morning of the same day, Joseph Metzler sued out a writ of replevin against Klein, and took the goods in question away. The action of replevin was dismissed for want of prosecution, and a return of the goods ordered. Gradle, the surety, pleaded in mitigation of damages that the right of property was in Metzler, and not in Klein. A trial of that issue resulted in a verdict and judgment in favor of the plaintiff for $1389,—the value of the property, and interest. This judgment, on appeal to the Appellate Court for the First District, was affirmed, and Gradle appeals to this court.

On the trial, Klein testified that when he bought and paid for the goods he had no notice that any sale had been made to Metzler, and there was evidence tending to show that he had notice of that sale. It was also shown that Schlesinger had applied to Metzler and his brother, then in business together, to sell them the entire stock of goods and materials, but that the brother declined to share in the purchase. One Schroeder, called by the plaintiff, testified that on January 12, 1877, he saw Joseph Metzler at the place of business of Strausz, Schlesinger & Co., and was permitted to testify, over objections, that Metzler came there in the afternoon of that day with another man, and found Schlesinger there, no other

partner being there.   The man produced a paper, and soon after Schlesinger went into the street and procured express-men and laborers, and in haste packed and took away the stock of ear muffs, and Metzler asked witness to assist.   The goods, consisting of several hundred boxes, were all taken then, and the office furniture and shelves were taken the next day.   It appears that the muffs were purchased by Metzler separately from the materials claimed by Klein.   Charles Metzler testified that the ear muffs were bought after the plush, braid and binding, but were first delivered.   All the goods came to the store of Metzler & Co. about the same time. The other material facts appear in the opinion.

Messrs. MOSES & NEWMAN, for the appellant.

Mr. FRANCIS LACKNER, for the appellee.

Mr. JUSTICE DICKEY delivered the opinion of the Court:

We find no reason to disturb the judgment of the Appellate Court.   It is contended the circuit court erred in admitting the testimony of Strausz and Schroeder, given after the proofs for defendant were closed, tending to prove that Strausz had no knowledge of any sale to Metzler until after the goods in Klein's hands had been taken on the writ of replevin, and also tending to prove that the remaining part of the stock (ear muffs) was taken away in great haste in the afternoon of January 12, and after the other goods were taken from Klein on the writ of replevin, and for this error the Appellate Court ought to have reversed the judgment.   It is insisted all this evidence is irrelevant, having no legal bearing upon the title of Metzler or Klein to the goods in controversy.   We do not think so.   The testimony of Charles Metzler, already given, tended to show that while the purchase of the plush, braid and binding was made by Metzler before his purchase of the residue of the stock, it also tends to show that the

latter purchase was made soon after, and does not exclude the idea that it was made on the evening of the 11th. The facts that the sale was to Schlesinger's son-in-law; that Metzler's brother refused to be a party to either purchase; that the goods were brought to the store at the same time; that Metzler, when Schlesinger found Klein had offered 87½ cents a yard, at once consented to take the goods at one dollar, when before he was willing to give no more than 85 cents, and his partner would not buy at that,—afforded ample ground for further inquiry, and authorized proof that both these sales were kept from the knowledge of his partners by Schlesinger, and that the ear muffs were removed from the store with great haste, and in the absence of and without the knowledge of his partners. The proof, subsequently brought out, that while there were some four hundred boxes of ear muffs taken from the store of Strausz, Schlesinger & Co., only one hundred and twenty-five boxes reached the store of Metzler & Co., tending to show that over two hundred of the boxes were spirited away, further shows that it was proper all this evidence should be considered by the jury. It tended to show that the apparent sales to Metzler were not real, but were mere devices to place the goods and the proceeds where Schlesinger alone should be able to avail himself of the same, to the exclusion of his partners and the creditors of his firm. If this were really so, and Metzler was a party to this arrangement, and for that purpose, he acquired no valid title to the goods, and a subsequent sale by the other partners, in behalf of their firm, passed a valid title to Klein, whether he had notice of the fraudulent sale to Metzler or not.

It is said that because the sales were separate, the second could not vitiate the first, which, it is said, was consummated. Before the court could act upon that hypothesis, it would be necessary that the court should decide that they were in truth separate, and not parts of one arrangement between Metzler and Schlesinger. That, under the evidence, was a

question of fact for the jury. The court was right in omitting to decide it. Charles Metzler had sworn that the ear muffs were bought after the plush, braid and binding, but were first delivered. The evidence tends to prove that all came to the store of Metzler & Co. at the same time, or about the same time. He nowhere says the ear muffs were not bought until the 12th, and if he had, the transactions are so connected with each other that such difference in date would not be decisive of the character of the transaction.

It is said some of this proof relates to acts done after Gradle signed the bond, and he should not be affected thereby. Gradle has, by the statute, merely the right to assert Metzler's title and deny Klein's, in the same way that Metzler might have done in the action of replevin. Whatever would be competent against Metzler in such case, was competent against Gradle, who has the privilege of standing on Metzler's rights.

We do not deem it necessary to discuss in detail each of the rulings of the court in giving, modifying and refusing instructions asked by the parties, respectively. The two instructions given at the request of plaintiff we think were correct and appropriate, and not calculated to mislead, and when taken together, clearly eliminate the questions of law from questions of fact, and do not, as counsel suggest, leave questions of law to the jury. It was not error to modify, as was done, instructions marked "1st" and "4th," given at defendant's request. Instructions "2d," "7th" and "8th," given at the request of defendant, ought not to have been given. Instructions given at the request of defendant, and marked "3d," "5th," "6th," "9th," "10th," "11th," "12th," "13th" and "14th," presented to the jury, fully, the law of the case as to all the questions raised by instructions asked by defendant. Those asked by defendant, and marked "15th," "16th," "17th," "18th," "19th," "20th" and "22d," were properly refused by the court. Each of them, except the

22d, was clearly erroneous on its face, and that marked "22d" had no relation to the question at issue.

Where a purchaser, for value, of personal property capable of immediate delivery, suffers the same to remain in the possession of the vendor, and while so in the possession of the vendor a subsequent purchaser of the same property, for value, in good faith and without notice of the former sale, obtains the actual possession of the property in question, the title of the subsequent purchaser must be upheld,—not only as against the vendor, but also as against the first purchaser. Counsel for appellant, conceding this to be the general rule, strenuously insist that this case, by the proofs, is taken out of the general rule. The substance of the contention is, that by the proofs, Metzler was guilty of no improper delay in his measures taken to get possession. It is said, in substance, that the sale to Metzler was between four and five o'clock in the afternoon of the day; that the hour for closing business was six, and that soon after nine the next morning Metzler came for the goods, and hence he was guilty of no faulty delay. Without passing upon the question sought to be presented upon this hypothesis, it is clear that whether the supposed action be faulty or not, is a question of fact, which the circuit court had no lawful right to take from the jury. The court was not asked to charge that if Metzler used due diligence to acquire possession, his title should prevail. Aside from this, some of the proofs pointed to about the hour of noon on the 11th of January as the date of Metzler's purchase, and the proof is *not* conclusive that he took any measures to gain possession before about noon of the 12th. Be this as it may, the instructions asked, which demanded of the court to rule that as a matter of law this case does not fall under the general rule of law mentioned, were properly refused.

Finding no material error in the rulings, the judgment is affirmed.

*Judgment affirmed.*